# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6702 | **DATE** | 10/4/2001 |
| **CASE TITLE** | Harvey Roth vs. Local 15, International Brotherhood | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter memorandum opinion and order. Hayes's, Midwest's, Phillip's, and Scheck's motions to quash subpoenas [18-1], [17-1], [12-1], [11-1], [9-1] are denied. Any issues relating to confidentiality, privilege, etc., will be addressed in open court on October 19, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 5 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 10/4/2001 date mailed notice | |
| | IS | courtroom deputy's initials | FILED FOR DOCKETING 01 OCT -5 AM 8: 47 Date/time received in central Clerk's Office | IS mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HARVEY ROTH, acting Regional Director )
of Region 13 of the **NATIONAL LABOR** )
**RELATIONS BOARD**, for and on behalf )
of the **NATIONAL LABOR RELATIONS** )
**BOARD**, )
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Petitioner, 　　　　)　Case No. 01 C 6702
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　Magistrate Judge
　　　　　　　　　　　　　　　　　　)　Martin C. Ashman
**LOCAL 15, INTERNATIONAL** )
**BROTHERHOOD OF ELECTRICAL** )
**WORKERS**, )
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Respondent. 　　　)

## MEMORANDUM OPINION AND ORDER

Harvey Roth, Acting Regional Director of Region 13 of the National Labor Relations Board, filed a petition with this Court seeking to enjoin Local 15, International Brotherhood of Electrical Workers, AFL-CIO, from picketing at the union hall of Pipe Fitters' Local Union 597 pursuant to 29 U.S.C. § 160(*l*). Roth alleged that Local 15's picketing activities, which aimed to induce or force members of Pipe Fitters' Local Union 597 to cease working at Midwest Generation EME, LLC, violated 29 U.S.C. §§ 158(b)(4)(i)–(ii)(B).

To establish a defense to the charges in Roth's petition (through an apparently novel application of the ally doctrine), Local 15 served subpoenas on four businesses—Hayes Mechanical, Midwest, Phillips Getschow Company, and Scheck Mechanical Corporation—commanding them to appear for a deposition and to produce certain documents.

Generally, Local 15 sought information on the business relationship between Midwest and each of the other subpoenaed businesses.

Presently before this Court are Hayes's, Midwest's, Phillips's, and Scheck's motions to quash the subpoenas on the grounds that Local 15 seeks information that is irrelevant and beyond the scope of the § 160(*l*) proceeding. For the following reasons, this Court denies Hayes's, Midwest's, Phillips's, and Scheck's motions to quash.

## I. <u>Background</u>

The events underlying the instant § 160(*l*) proceeding are an outgrowth of a labor dispute between Local 15 and Midwest, which caused Local 15 to strike against Midwest. The strike occurred from June 28, 2001, through August 31, 2001, at seven of Midwest's power stations, and it affected a large number of Local 15 members who performed maintenance work at the power stations.

During the course of the strike, Local 15 discovered information that led it to believe that Pipe Fitters' Union Local 597 was referring its members to Hayes, Phillips, and Scheck to perform work at Midwest that, but for the strike, Local 15's members would be performing. As a result, Local 15 appealed to Pipe Fitters' Union Local 597 to engage in a work stoppage at Midwest.

The appeal must have fallen on deaf ears because Pipe Fitters' Union Local 597 did nothing to interrupt work at Midwest. Taking a more direct approach, on August 1, 2001, Local

15 picketed the union hall of Pipe Fitters' Union Local 597 in Chicago, Illinois, with signs stating

"Jim Buchanan
Turning Proud Local 597 Pipefitters into SCABS
Crossing Local 15, IBEW's picket lines at Midwest Generation."

(Pet. Temporary Inj. at 3.) Picketing continued on August 7 and 15.

On August 20, 2001, Hayes, Phillips, and Scheck, acting through the Mechanical Contractors Association,[1] filed a charge with the NLRB against Local 15 alleging that Local 15's picketing activities at the union hall constituted an unfair labor practice. After conducting an investigation into the merits of the charge, Roth, as Acting Regional Director of the NLRB, determined that he had reasonable cause to believe that Local 15's picketing activities at the union hall constituted an unfair labor practice. Consequently, on August 28, 2001, Roth filed a Petition for Temporary Injunction in federal court as required by 29 U.S.C. § 160(*l*).

Local 15 answered the petition on September 19, 2001, with several denials. It also asserted a defense based on the ally doctrine under the belief that Hayes, Phillips, and Scheck, by virtue of Pipe Fitters' Union Local 597's referrals, had performed struck work at Midwest.[2]

To develop its defense, Local 15 served subpoenas on Hayes, Midwest, Phillips, and Scheck to obtain certain business information, namely, work contracts entered into between Midwest and each of the other subpoenaed businesses from June 1, 2000, through September 10,

---

[1] Hayes, Phillips, and Scheck were members of this association.

[2] As a general rule, 29 U.S.C. §§ 158(b)(4)(i)–(ii)(B) prohibits secondary boycotts—e.g., strikes or pickets by a labor organization against a neutral employer with whom the labor organization has no legitimate dispute. A neutral employer may lose this protection, however, if it becomes "allied" with the primary employer with whom the labor organization has a dispute. One way for a neutral employer to become "allied" is by performing struck work—i.e., work that it would not perform but for a strike. *Boich Mining Co. v. NLRB*, 955 F.2d 431, 434 (6th Cir. 1992).

2001. The instant motions to quash, filed by Hayes, Midwest, Phillips, and Scheck, seek to block the production of this information, as it purportedly is irrelevant and falls outside the scope of the § 160(*l*) proceeding.

## II. Discussion

Section 160(*l*) instructs the district court to conduct two, albeit somewhat overlapping, inquiries before granting a petitioner temporary injunctive relief. *Kinney v. Int'l Union of Operating Eng'rs, Local 150*, 994 F.2d 1271, 1278 & n.9 (7th Cir. 1993); *Kinney v. Pioneer Press*, 881 F.2d 485, 490-91 (7th Cir. 1989); *Kobell v. Reid Plastics, Inc.*, 136 F.R.D. 575, 579 (W.D. Pa. 1991). Initially, the court must determine whether the petitioner properly filed the petition for injunctive relief—i.e., whether the petitioner had reasonable cause to believe that the respondent engaged in an unfair labor practice as defined by 29 U.S.C. § 158. *Int'l Union of Operating Eng'rs, Local 150*, 994 F.2d at 1278 & n.9; *Pioneer Press*, 881 F.2d at 490. Next, the court must determine whether injunctive relief is "just and proper." *Id.*

Regardless of the inquiry, the statute makes it clear that the court must provide all of the parties to the proceeding, including the charging party, an opportunity to present "any relevant testimony." 29 U.S.C. § 160(*l*). In terms of discovery for the parties, this fundamental proposition, coupled with the principles of the Federal Rules of Civil Procedure, calls for an opportunity to ascertain and obtain any relevant information. *Madden v. Int'l Hod Carriers' Bldg. & Common Laborers' Union of Am., Local No. 41*, 277 F.2d 688, 690 (7th Cir. 1960); *Fusco v. Richard W. Kaase Baking Co.*, 205 F. Supp. 459, 462-63 (N.D. Ohio 1962). Relevant information is information that tends to prove or disprove an alleged fact. Discoverable

-4-

information, generally speaking, is relevant information that is not subject to any privilege. Fed. R. Civ. P. 26(b)(1).

The first matter we address—whether the information that Local 15 seeks is relevant to the instant § 160(*l*) proceeding—received little attention in the parties' briefs. By way of introduction, the courts have held that information pertaining to "the issues raised by the petition" is relevant for purposes of a § 160(*l*) proceeding. *Kinney v. Chi. Tribune Co.*, No. 89 C 3829, 1989 WL 91844, at *1 (N.D. Ill. Aug. 7, 1989) (quoting *Madden v. Milk Wagon Drivers Union Local 753*, 229 F. Supp. 490, 492 (N.D. Ill. 1964)). It is axiomatic that this includes the facts upon which the petitioner will rely to support his allegation of reasonable cause to believe that an unfair labor practice had occurred. *Id.* For reasons too clear, it must also include the facts upon which the respondent will rely to establish a defense to the petitioner's allegation of reasonable cause, wherever those facts may be found. Accordingly, we disagree with Midwest's conclusory statement that the discovery sought by Local 15 is "wholly unrelated to the issues raised in the . . . petition." (Midwest's Mot. Quash Resp't's Subpoena at 4.)

Moving on, we turn to the matter of whether the information that Local 15 seeks is discoverable to counter Roth's allegation of reasonable cause. The parties agree that the facts upon which Roth will rely to support his allegation of reasonable cause are fully discoverable by Local 15, as all of the case law points in this direction. *See, e.g., Chi. Tribune Co.*, 1989 WL 91844, at *1; *Milk Wagon Drivers Union Local 753*, 229 F. Supp. at 492. The matter in dispute involves the fact that Local 15 is attempting to ascertain and obtain facts from third parties upon which Roth will not rely to support his allegation of reasonable cause, but upon which Local 15 intends to rely to establish its defense to Roth's allegation of reasonable cause.

If § 160(*l*) instructed this Court to make a decision on the merits as to Roth's allegation of reasonable cause, then our decision would certainly be in Local 15's favor. But as the subpoenaed businesses point out, this Court's limited role with respect to examining Roth's basis for filing the petition—i.e., determining whether Roth had reasonable cause to file the petition—necessarily affects the type of discovery permitted in this § 160(*l*) proceeding. The statutory standard of reasonable cause is satisfied if disputed factual issues could be resolved by the NLRB in favor of the petitioner and the petitioner's legal theory is substantial and not frivolous. *Int'l Union of Operating Eng'rs, Local 150*, 994 F.2d at 1278; *Squillacote v. Graphic Arts Int'l Union*, 540 F.2d 853, 858 (7th Cir. 1976) (quoting *Hirsch v. Bldg. & Constr. Trades Council of Phila. & Vicinity*, 530 F.2d 298, 302 (3d Cir. 1976)). In determining whether this low threshold is overcome, all inferences that can be fairly drawn from the facts are drawn in the petitioner's favor, and the benefit of the doubt goes toward sustaining the petitioner's legal theory, however novel it may be. *Graphic Arts Int'l Union*, 540 F.2d at 858.

In light of these principles, at least two courts have blocked third-party discovery by the respondent where the third party was not testifying on behalf of the petitioner. In *Richard W. Kaase Baking Co.*, the court refused to allow the respondent to obtain statements from third parties who were not to be called as witnesses by the petitioner because such statements would only result in a conflict in the evidence and the court could not resolve the conflict in the evidence. 205 F. Supp. at 464. Hence, the court concluded that the statements would not benefit the respondent in any way. Similarly, in *San Francisco-Oakland Newspaper Guild v. Kennedy*, the Ninth Circuit Court of Appeals affirmed the district court's decision to deny the respondent's request for discovery from third parties to establish a defense because the evidence "would at

best have only created a conflict in the evidence and raised credibility issues which . . . could only be resolved by the Board." 412 F.2d 541, 546 (9th Cir. 1969). The reasoning of both cases, which we find persuasive and applicable to this case, militates against a finding in Local 15's favor.[3] To clarify, we do not mean to say that the subpoenaed information would be irrelevant to the reasonable cause inquiry, only that the subpoenaed information could not benefit Local 15 considering our limited role in this aspect of the § 160(*l*) proceeding, and the facts presented in the case so far.

However, just as our role in the § 160(*l*) proceeding expands as we move to the "just and proper" inquiry, so does our view of permissible discovery.[4] *See Int'l Union of Operating Eng'rs, Local 150*, 994 F.2d at 1278; *Pioneer Press*, 881 F.2d at 490-91. Section 160(*l*) tells the court to grant such relief as it deems "just and proper." 29 U.S.C. § 160(*l*). Employing the traditional equity test, the court must assess whether the petitioner has a reasonable likelihood of success on the merits, whether the petitioner has an adequate remedy at law, whether the petitioner would suffer irreparable harm if the injunction did not issue, whether the threatened injury to the petitioner outweighs the threatened harm an injunction would inflict on the respondent, and whether the granting of a temporary injunction would serve the public interest. *Int'l Union of Operating Eng'rs, Local 150*, 994 F.2d at 1275 (citing *Faheem-El v. Klincar*, 841 F.2d 712, 716 (7th Cir. 1988)). Significantly, as the preceding factors reveal, a searching inquiry into the

---

[3] We recognize that the court in *Richard W. Kaase Baking Co.* relied on the "good cause" standard in old Rule 34 to arrive at its decision; nevertheless, the reasoning is still persuasive. 205 F. Supp. at 464.

[4] As none of the parties addressed this aspect of our role in the § 160(*l*) proceeding, we raise the issue sua sponte.

- 7 -

strength and merits of the petitioner's case must be performed, as in the typical injunction case. *Pioneer Press*, 881 F.2d at 491 ("Grave harm times low likelihood of success may not add up to a conclusion that [injunctive] relief is 'just and proper.'").

For that reason, we think that Local 15 should be allowed to depose and obtain documents from Hayes, Midwest, Phillips, and Scheck. An injunction under § 160(*l*) is an extraordinary remedy and represents a very far-reaching power. *Int'l Union of Operating Eng'rs, Local 150*, 994 F.2d at 1277 ("It is an extraordinary tool because it injects the legal system into disputes before a full airing of the facts and a careful consideration of the law, and mistakes can be costly.") To arrive at the decision to use this power and grant this remedy, we must have a true understanding about the nature and merits of the case, which we think can only be obtained after considering relevant information from both sides to the dispute.[5]

### III. Conclusion

For the reasons stated, this Court denies Hayes's, Midwest's, Phillip's, and Scheck's

---

[5] Briefly, the cases cited by the subpoenaed businesses—*San Francisco-Oakland Newspaper Guild*, 412 F.2d at 546; *Reid Plastics, Inc.*, 136 F.R.D. at 579-80; *Chicago Tribune Co.*, 1989 WL 91844, at *1; *Milk Wagon Drivers Union Local 753*, 229 F. Supp. at 492-93; and *Richard W. Kaase Baking Co.*, 205 F. Supp. at 464—are inapposite on this matter as none of the cases discuss permissible discovery from a third party who was not to be called as a witness by the petitioner in relation to the "just and proper" inquiry.

motions to quash the subpoenas. Any issues relating to confidentiality, privilege, etc., will be addressed in open court on October 19, 2001.

**ENTER ORDER:**

**Dated:** October 4, 2001.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Copies have been mailed to:

DENISE R. JACKSON-RILEY, Esq.
National Labor Relations Board
Region 13
200 West Adams Street
Suite 800
Chicago, IL 60606

Attorney for Petitioner

DANIEL V. KINSELLA, Esq.
Rooks, Pitts and Poust
10 South Wacker Drive
Suite 2300
Chicago, IL 60606

Attorney for Movant, Phillips Getschow
  Company

P. KEVIN CONNELLY, Esq.
PATRICK V. MELFI, Esq.
Connelly Sheehan Moran
150 South Wacker Drive
Suite 1600
Chicago, IL 60606

Attorneys for Movant, Hayes Mechanical

CHRISTOPHER T. HEXTER, Esq.
Schuchat, Cook & Werner
1221 Locust Street
2nd Floor
St. Louis, MO 63103-2364

Attorney for Respondent

ALLEN E. LAPIDUS, Esq.
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003

Attorney for Movant, Scheck Mechanical
  Corporation

LISA A. LOPATKA, Esq.
THOMAS KOUTSOUVAS, Esq.
Franczek Sullivan, P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL 60606

Attorneys for Movant, Midwest Generation,
  EME, LLC